UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ASHLAND INC., <br><br> Plaintiff, <br><br> v. <br><br> LEO H. LONG, JR., et al., <br><br> Defendants. | CASE NO. C10-5889BHS <br><br> ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT |

This matter comes before the Court on motions to dismiss and for summary judgment of Defendants Leo H. Long, Jr. ("Leo Long") and Thomas C. Long ("Tom Long") (collectively, "Defendants"). Dkts. 10 & 14. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby denies Defendants' motions to dismiss and for summary judgment for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On December 7, 2010, Plaintiff Ashland, Inc. ("Ashland") filed a complaint against Defendants for breach of contract. Dkt. 1.

On February 9, 2011, Leo Long filed a motion to dismiss and motion for summary judgment seeking either dismissal of Ashland's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure or summary judgment of Ashland's claims based on collateral estoppel. Dkt. 10. On February 10, 2011, Tom Long joined in Leo Long's motion. Dkt.

ORDER - 1

14. On March 1, 2011, the Court signed the parties' stipulated motion to continue the hearing of Defendants' motions to March 18, 2011. On March 14, 2011, Ashland responded. Dkt. 18. On March 18, 2011, Leo Long replied (Dkt. 22) and Tom Long joined in that reply (Dkt. 23).

## II. FACTUAL BACKGROUND

### A. Complaint

Ashland alleges that each Defendant breached a contract with Ashland by refusing to indemnify and defend Ashland in an underlying personal injury lawsuit that was filed in the Superior Court for the State of Washington, Grays Harbor County. *See generally* Dkt. 1 ("Complaint"). The contract in question is a Purchase and Sale Agreement ("PSA") between Ashland[1], Defendants, and Atlas Foundry & Machine Co. ("Atlas") dated May 2, 1985. *Id*., Exh. 1 (the "PSA"). Atlas was the buyer, Defendants were the guarantors, and Ashland was the seller. PSA at 1. The sale involved stock and assets of Ashland's Foundry Division ("Foundry Business"). *Id*. Ashland alleges that the "PSA conveyed [Ashland's] interest in the Long Foundry located in Hoquiam, Washington to Atlas." Complaint, ¶ 7.

The PSA includes provisions regarding the assumption of liabilities, indemnification, and guaranteed performance. Ashland alleges these terms are as follows:

> 8. In Section 3.1(e) of the PSA, Atlas agreed to assume all claims and liabilities arising out of the operation of [Ashland's] Foundry Business, known or unknown, whether arising from acts, omissions or occurrences occurring before or after the Closing. *See* [PSA] at 8. On information and belief, Atlas is no longer an existing legal entity.
> 9. In Section 15.7 of the PSA, in recognition that [Ashland] could remain contingently liable for the same liabilities, Atlas agreed to indemnify

---

[1] Although the named seller was Ashland Technology, Inc., there is currently no challenge to the assertion that Ashland is entitled to enforce all of Ashland Technology, Inc.'s rights under the PSA. Therefore, for the purposes of this order, the Court will refer to Ashland as the seller.

>and hold Ashland harmless from and against any and all loss, cost, damage, claim and expense, including, without limitation, attorneys fees and disbursements, arising under or in connection with any obligations or liabilities assumed by Atlas. *See* [PSA] at 38.
>    10.  In the PSA at Section 10, Leo H. Long Jr. and Thomas C. Long unconditionally guaranteed the performance of Atlas's obligations under the PSA and agreed to be jointly and severally liable on those obligations. *See* [PSA] at 26-27.

Complaint, ¶¶ 8-10.

In 2007, Judy Clauson filed a complaint for personal injuries against numerous Defendants including Ashland. *Id*., ¶ 13 and Exh. B. Ashland alleges that Mrs. Clauson "sought damages for personal injuries allegedly suffered by Judy Clauson due to exposure to asbestos fibers brought home by her former husband while he was employed at the Long Foundry." *Id*., ¶ 14. Ashland alleges that Mrs. Clauson's alleged injuries were covered by the indemnity provisions of the PSA and, therefore, Ashland sought indemnity for Atlas and a guarantee of Atlas' performance from Defendants. *Id*., ¶ 15. Ashland alleges that Atlas, by way of attorney, refuses to indemnify Ashland (*id*., ¶ 23) and that Leo Long denied responsibility to indemnify Ashland (*id*., ¶ 22). Finally, Ashland alleges that it settled with Mrs. Clauson. *Id*. ¶ 24.

**B.    The 1985 Purchase and Sale Agreement**

In 1975, U.S. Filter Company purchased two separate foundries, the Long Foundry and the Atlas Foundry, in two separate transactions. The Long Foundry, located in Hoquiam, Washington, became "New Atlas 2," a wholly owned subsidiary of U.S. Filter Company. The Atlas Foundry, located in Tacoma, Washington, became "New Atlas," a separate wholly owned subsidiary of U.S. Filter Company. In the early 1980s, Ashland Oil or Ashland Technologies purchased U.S. Filter Company. As of its closure in 1984, Ashland Technology, Inc. operated the Long Foundry under an assigned lease.

In May 1985, Atlas purchased certain assets and assumed certain liabilities relating to Ashland Technology, Inc.'s foundry business by executing a PSA with Ashland

ORDER - 3

Technology, Inc. Leo Long signed the PSA on behalf of Atlas as president of the company. Leo Long and his brother Tom Long also signed the PSA as guarantors. The parties dispute what assets and/or liabilities were actually transferred in the PSA. According to Defendants, the real property listed in Exhibit A to the PSA was transferred, which included the Atlas Foundry located in Tacoma, Washington. *See* Dkt. 10 at 2-3. According to Ashland, the PSA also transferred Ashland Technology, Inc.'s interest in the Long Foundry, located in Hoquiam, Washington, to Atlas. *See* Dkt. 18 at 2-3.

**C.     The Origins of AmeriCast**

Shortly after the PSA, Leo Long bought out Tom Long and managed Atlas until 1989. In 1989, Atlas was sold to an entity owned by TIC United Corporation ("TIC"). That entity subsequently became Atlas Foundry & Machine Company, a division of TIC. TIC entered bankruptcy proceedings in 2000. Atlas Foundry & Machine Company continued to operate during the pendency of the bankruptcy proceeding. In 2002, pursuant to a purchase and sale agreement, TIC transferred its Atlas assets and certain liabilities to Atlas Foundry, LLP. AmeriCast Technologies, Inc. is the successor-in-interest to Atlas Foundry, LLP.

**D.     The Clauson Suit**

On or about May 3, 2007, the Clausons initiated an action ("the Clauson suit") against Atlas Foundry Limited Partnership, Atlas Castings & Technology, and AmeriCast Technologies, Inc. (collectively, "AmeriCast") and Ashland in Grays Harbor County Superior Court. On May 15, 2007, the Clausons filed their first amended complaint in which they alleged that Judy Clauson's former husband, Clifford Eberwein ("Eberwein"), worked at the Long Foundry between 1979 and 1984. The amended complaint further alleged that Eberwein was exposed to asbestos fibers during such employment, and that Judy Clauson contracted mesothelioma after years of living with Eberwein. The

Clausons alleged that AmeriCast was liable for the Clausons' damages on the sole basis that AmeriCast was the successor-in-interest to the Long Foundry.

On August 6, 2007, the Clausons conducted a Rule 30(b)(6) deposition of AmeriCast. AmeriCast designated Duane J. Britschgi, then president of Atlas Castings & Technology, which was a division of AmeriCast Technologies, Inc. Mr. Britschgi had been employed with Atlas Foundry since 1978. According to Defendants, at that deposition AmeriCast produced historical documents in response to the Clausons' demands and Mr. Britschgi testified at length about such documents. Defendants maintain that Mr. Britschgi's testimony at this deposition confirmed by way of the 1985 PSA, that Atlas purchased only the Atlas Foundry in Tacoma and not the Long Foundry in Hoquiam. Ashland contends that Mr. Britschgi was not involved in the 1985 transaction and that he had no personal knowledge regarding what was transferred in the PSA. Ashland argues that "[t]he fact of the matter is that the only issue Mr. Britschgi can speak to is whether or not the Long Foundry was operating at the time of the sale. That is a fact completely irrelevant to the question of whether or not Ashland's interest in the Long Foundry passed to Atlas pursuant to the 1985 PSA." Dkt. 18 at 4.

On September 5, 2007, the Clausons filed a second amended complaint wherein they continued to allege that AmeriCast was liable for the Clausons' damages because it was a successor-in-interest to the Long Foundry. On December 20, 2007, AmeriCast moved for summary judgment on the basis that AmeriCast was not a successor-in-interest to the Long Foundry. Ashland filed a brief opposing the motion. According to Defendants, Ashland opposed AmeriCast's motion on the same basis that Ashland bases its complaint in the instant suit, i.e., that the 1985 PSA transferred interest in the Long Foundry to Atlas. However, Ashland maintains that it opposed the motion in the Clauson suit to insure that the scope of the motion was restricted to the relief requested and did not include a finding that Ashland was a successor-in-interest to the Long Foundry. Dkt. 18

ORDER - 5

at 10. The judge granted AmeriCast's motion and stated on the record that "I cannot reasonably construe the language in the 1985 purchase and sale agreement to constitute a transfer of the Long Foundry liabilities to Atlas," and that "I likewise find that the 2002 transaction did not result in a transfer of any liabilities that may have been passed to Atlas at that point to Atlas Foundry Limited Partnership, so I am going to grant your motion." Dkts. 8-4 & 8-5.

## III. DISCUSSION

**A.   Motions to Dismiss**

Fed. R. Civ. P. 12(b)(6) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007) (*internal citations omitted*). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

**1.   Judicial Notice**

As a general rule, courts may not consider materials beyond the pleadings when ruling on a 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The Court, however, may take judicial notice of public records when considering a 12(b)(6) motion to dismiss. *See Shaw v. Hahn*, 56 F.3d 1128, 1129 n. 1 (9th Cir. 1995).

ORDER - 6

Facts are subject to judicial notice if they are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (quoting Fed. R. Evid. 201(b)(2)).

Defendants argue that the Court may take judicial notice of certain documents that have been submitted by the parties. Dkt. 10 at 9-10. Specifically, Defendants assert that:

> The public records in this case include (l) two deposition transcripts of Mr. Britschgi, (2) an excerpt from the verbatim report of proceedings in the Underlying Action in which the Court finds that Atlas was not a successor-in-interest to the Long Foundry, and (3) the Order in the Underlying Action granting AmeriCast's Motion for Summary Judgment.

*Id.* With regard to the deposition, a deponent is not a source whose accuracy cannot be reasonably questioned. Therefore, the Court declines to take judicial notice of Mr. Brischgi's deposition.

On the other hand, the Court will take judicial notice of the excerpt and the order from the underlying proceeding.

### 2. Defendants' Motion

Defendants argue that the "Court should dismiss Ashland's Complaint against Mr. Long because the Complaint fails to 'state a claim to relief that is plausible on its face.'" Dkt. 10 at 9 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). Defendants contend that the material from the underlying proceeding, or "incontestable evidence," shows that the PSA did not include the liabilities of the Long Foundry in Hoquiam, Washington. In other words, Defendants content that the allegation contained in paragraph 7 of Ashland's complaint is false. The problem with Defendants' argument is that they are asking the Court to assess the veracity of Plaintiff's allegations when the Court is charged with assessing the sufficiency of the allegations.

Ashland has alleged the existence of a contract in which Defendants agreed to indemnify and guarantee certain liabilities. As such, Ashland has set forth allegations

ORDER - 7

that, "even if doubtful in fact," raise a right to relief above the level of speculation. *See Twombly,* 127 S. Ct. at 1974. Therefore, the Court denies Defendants' motion to dismiss Ashland's complaint.

**B.      Defendants' Motion for Summary Judgment**

      **1.      Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The

nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 253). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## 2. Collateral Estoppel

Defendants argue that Ashland should be precluded from litigating this action based on the doctrine of collateral estoppel. Dkt. 10 at 13-15. Federal courts sitting in diversity jurisdiction apply the issue preclusion rules of the forum state. *Pardo v. Olson & Sons, Inc.*, 40 F.3d 1063, 1066 (9th Cr. 1994). In Washington, the party asserting collateral estoppel bears the burden of persuading the court:

> (1) the issue decided in the prior adjudication is identical with the one presented in the second action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom [collateral estoppel] is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice.

*State v. Vasquez*, 148 Wn.2d 303, 308 (2002). In addition, collateral estoppel precludes only those issues actually litigated and necessarily determined in a prior action. *Shoemaker v. Bremerton*, 109 Wn.2d 504, 507-08 (1987).

In this case, Defendants have failed to persuade the Court that collateral estoppel should be applied for at least two reasons: (1) Defendants have failed to show that the assumption of liabilities under the PSA was necessarily determined in the prior action, and (2) Defendants have failed to show that application of the doctrine would not work an injustice.

### a. Necessarily Determined

If there is ambiguity or indefiniteness in a verdict or judgment, collateral estoppel will not be applied as to that issue. *Mead v. Park Place Properties*, 37 Wn. App. 403 (1984). "If a judgment of a court of first instance is based on determinations of two

ORDER - 9

issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." Restatement (Second) of Judgments § 27, comment I.

Ashland argues that the judgment in the underlying action was "based on two independent grounds," one based on the PSA and one based on the 2002 bankruptcy transaction. Dkt. 18 at 12-13. AmeriCast's brief in the prior action argued that "even if Atlas assumed liabilities relating to Long Foundry in 1985, Atlas Foundry, LLP did not assume such liabilities in 2002." Dkt. 11, Declaration of Guy J. Sternal, Exhibit D at 6-7. The order, however, fails to specify on what ground the court granted Atlas' motion. *See* Dkt. 8-5. The independent, proposed grounds for entering judgment in Atlas' favor creates an ambiguity and indefiniteness in the underlying judgment and the judgment is not conclusive with respect to either issue standing alone. Therefore, the Court denies Defendants' motion for summary judgment because Defendants have failed to show that assumption of liabilities under the PSA was an issue necessarily determined in the prior action.

      **b.**    **Injustice**

The injustice element is "most firmly rooted in procedural unfairness. 'Washington courts look to whether the parties to the earlier proceeding received a full and fair hearing on the issue in question.'" *Thompson v. Dep't of Licensing*, 138 Wn.2d 783, 795-6 (1999) (quoting *In re Marriage of Murphy*, 90 Wn. App. 488, 498 (1998)). In other words, a court should "focus on whether the parties to the earlier adjudication were afforded a full and fair opportunity to litigate their claim in a neutral forum." *Nielson By and Through Nielson v. Spanaway General Medical Clinic, Inc.*, 135 Wn.2d 255, 264-65 (1998).

In this case, Ashland argues that it did not have a full and fair opportunity to litigate its claim in the underlying action because Ashland's current claim was not present

ORDER - 10

in the underlying action. Ashland and Defendants were co-defendants in the action brought by Mrs. Clauson and neither defendant filed cross-claims. Further, Ashland argues that it had no incentive to vigorously contest the interpretation of the PSA in the underlying action. The Court agrees with Ashland that Ashland did not have a full and fair opportunity to litigate its breach of contract claims in the underlying action. In fact, the claim wasn't even presented in the underlying action. Therefore, the Court denies Defendants' motion for summary judgment because Defendants have failed to show that Ashland received a full and fair opportunity to litigate its claims.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Defendants' motions to dismiss and for summary judgment (Dkts. 10 & 14) are **DENIED**.

DATED this 12th day of May, 2011.

BENJAMIN H. SETTLE  
United States District Judge

ORDER - 11