UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ASHLAND INC.,

        Plaintiff,

v.

LEO H. LONG, JR., et al.,

        Defendants.

CASE NO. C10-5889BHS

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY

      This matter comes before the Court on Defendant Leo H. Long, Jr's. ("Leo Long") motion for summary judgment (Dkt. 27) and Plaintiff Ashland Inc.'s ("Ashland") motion for leave to file a surreply (Dkt. 35). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby denies Leo Long's motion for summary judgment and denies Ashland's motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

      On December 7, 2010, Ashland filed a complaint against Defendants Leo Long and Thomas Long ("Defendants") for breach of contract. Dkt. 1.

      On June 14, 2011, Leo Long filed a motion for summary judgment. Dkt. 27. On June 16, 2011, Defendant Thomas C. Long joined in Leo Long's motion. Dkt. 31. On July 5, 2011, Ashland responded. Dkt. 32. On July 8, 2011, Leo Long replied. Dkt. 34.

ORDER - 1

On July 21, 2011, Ashland filed a motion for leave to file a surreply. Dkt. 35.

## II. FACTUAL BACKGROUND

**A.  Complaint**

Ashland alleges that Defendants breached a contract with Ashland by refusing to indemnify and defend Ashland in an underlying personal injury lawsuit that was filed in the Superior Court for the State of Washington, Grays Harbor County. *See generally* Dkt. 1 ("Complaint").  The contract in question is a Purchase and Sale Agreement ("PSA") between Ashland Technology, Inc. ("Ashland Technology"), Defendants, and Atlas Foundry & Machine Co. ("Atlas") dated May 2, 1985. *Id.*, Exh. A (the "PSA").  Atlas was the buyer, Defendants were the guarantors, and Ashland Technology was the seller. PSA at 1.  The sale involved stock and assets of Ashland's Foundry Division ("Foundry Business"). *Id*.  Ashland alleges that the "PSA conveyed Ashland Technology's interest in the Long Foundry located in Hoquiam, Washington to Atlas." Complaint, ¶ 7.

The PSA includes provisions regarding the assumption of liabilities, indemnification, and guaranteed performance.  Ashland alleges these terms are as follows:

> 8. In Section 3.1(e) of the PSA, Atlas agreed to assume all claims and liabilities arising out of the operation of Ashland Technology's Foundry Business, known or unknown, whether arising from acts, omissions or occurrences occurring before or after the Closing. *See* [PSA] at 8. On information and belief, Atlas is no longer an existing legal entity.
> 9. In Section 15.7 of the PSA, in recognition that [Ashland] could remain contingently liable for the same liabilities, Atlas agreed to indemnify and hold Ashland harmless from and against any and all loss, cost, damage, claim and expense, including, without limitation, attorneys fees and disbursements, arising under or in connection with any obligations or liabilities assumed by Atlas. *See* [PSA] at 38.
> 10. In the PSA at Section 10, Leo H. Long Jr. and Thomas C. Long unconditionally guaranteed the performance of Atlas's obligations under the PSA and agreed to be jointly and severally liable on those obligations. *See* [PSA] at 26-27.

Complaint, ¶¶ 8-10.

ORDER - 2

In 2007, Judy Clauson filed a complaint for personal injuries against numerous Defendants including Ashland. *Id.*, ¶ 13 and Exh. B. Ashland alleges that Mrs. Clauson "sought damages for personal injuries allegedly suffered by Judy Clauson due to exposure to asbestos fibers brought home by her former husband while he was employed at the Long Foundry." *Id.*, ¶ 14. Ashland alleges that Mrs. Clauson's alleged injuries were covered by the indemnity provisions of the PSA and, therefore, Ashland sought indemnity for Atlas and a guarantee of Atlas' performance from Defendants. *Id.*, ¶ 15. Ashland alleges that Atlas, by way of its attorney, refuses to indemnify Ashland (*id.*, ¶ 23) and that Leo Long denied responsibility to indemnify Ashland (*id.*, ¶ 22). Finally, Ashland alleges that it settled with Mrs. Clauson. *Id.* ¶ 24.

**B.     The 1985 Purchase and Sale Agreement**

In 1975, U.S. Filter Company purchased two separate foundries, the Long Foundry and the Atlas Foundry, in two separate transactions. The Long Foundry, located in Hoquiam, Washington, became "New Atlas 2," a wholly owned subsidiary of U.S. Filter Company. The Atlas Foundry, located in Tacoma, Washington, became "New Atlas," a separate wholly owned subsidiary of U.S. Filter Company. In the early 1980s, Ashland Oil or Ashland Technologies purchased U.S. Filter Company. As of its closure in 1984, Ashland Technology, Inc. operated the Long Foundry under an assigned lease.

In May 1985, Atlas purchased certain assets and assumed certain liabilities relating to Ashland Technology, Inc.'s foundry business by executing a PSA with Ashland Technology, Inc. Leo Long signed the PSA on behalf of Atlas as president of the company. Leo Long and his brother Thomas Long also signed the PSA as guarantors. The PSA provides that "[i]n addition to any other liabilities, the party committing [a] breach shall be liable to the other party with respect to all expenses incurred by such other party in connection with this Agreement." PSA, ¶ 15.1. With regard to the parties in interest, the PSA provides as follows:

> This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns but shall not be assignable by any party without the written consent of the other parties. Nothing in this Agreement, whether express or implied, is intended or shall be construed to confer upon any person other than the parties hereto any right, remedy or claim under or by reason of this Agreement, nor is anything in this Agreement intended to relieve or discharge the obligation or liability of any third party to this Agreement, nor shall any provision give any third persons any rights of subrogation or action over against any party to this Agreement.

*Id.* ¶ 15.3.

**C.  The Origins of AmeriCast**

Shortly after the PSA, Leo Long bought out Thomas Long and managed Atlas until 1989. In 1989, Atlas was sold to an entity owned by TIC United Corporation ("TIC"). That entity subsequently became Atlas Foundry & Machine Company, a division of TIC. TIC entered bankruptcy proceedings in 2000. Atlas Foundry & Machine Company continued to operate during the pendency of the bankruptcy proceeding. In 2002, pursuant to a purchase and sale agreement, TIC transferred its Atlas assets and certain liabilities to Atlas Foundry, LLP. AmeriCast Technologies, Inc. is the successor-in-interest to Atlas Foundry, LLP.

**D.  The Clauson Suit**

On or about May 3, 2007, the Clausons initiated an action ("the Clauson suit") against Atlas Foundry Limited Partnership, Atlas Castings & Technology, and AmeriCast Technologies, Inc. (collectively, "AmeriCast") and Ashland in Grays Harbor County Superior Court. On May 15, 2007, the Clausons filed their first amended complaint in which they alleged that Judy Clauson's former husband, Clifford Eberwein ("Eberwein"), worked at the Long Foundry between 1979 and 1984. The amended complaint further alleged that Eberwein was exposed to asbestos fibers during such employment, and that Judy Clauson contracted mesothelioma after years of living with Eberwein. The

Clausons alleged that AmeriCast was liable for the Clausons' damages on the sole basis that AmeriCast was the successor-in-interest to the Long Foundry.

On September 5, 2007, the Clausons filed a second amended complaint wherein they continued to allege that AmeriCast was liable for the Clausons' damages because it was a successor-in-interest to the Long Foundry. On December 20, 2007, AmeriCast moved for summary judgment on the basis that AmeriCast was not a successor-in-interest to the Long Foundry. Ashland filed a brief opposing the motion and argued as follows:

> Plaintiffs claim that Ashland is a successor to ATEC/"Long Foundry." *See* Plaintiffs' Motion for Partial Summary Judgment. Plaintiffs' Motion for Partial Summary Judgment has substantial gaps regarding the corporate structure and subsequent mergers and acquisitions with respect to ATEC's relationship to the Long Foundry. *Id*. Ashland and ATEC never merged, and ATEC was always a wholly owned subsidiary of Ashland. *See* Statement of Undisputed Facts, ¶¶ 11-13. Therefore, **Ashland is not a successor to ATEC/the "Long Foundry," because ATEC and Ashland always remained two distinct corporate entities up to and including ATEC's dissolution.**
>
> ***
>
> ATEC did not merge with Ashland, rather it was dissolved according to Section 103 of the Delaware General Corporation Law. Pursuant to Section 103, a certificate of dissolution is effective when the instrument is signed by an authorized officer of the corporation, all fees and taxes are accounted for, and the instrument is filed with the Secretary of State. 8 Del.C. 1953, § 103. Per Section 103(d), the instrument becomes effective upon its filing date. 8 Del.C. 1953, § 103(d). ATEC's certificate of dissolution was filed with the Delaware Secretary of State on September 27, 2001 (after having been authorized by all stockholders on September 30, 2000). *See* Statement of Undisputed Facts, ¶¶ 21-22. Thus, on September 27, 2001, ATEC ceased to exist as a legal entity. *Id*. Once a certificate of dissolution becomes effective in accordance with Section 103, the corporation is dissolved. 8 Del.C. 1953, § 275(f). Since ATEC's certificate of dissolution was in compliance with Section 103, its dissolution became effective on September 27, 2001. Ashland was never responsible for ATEC's former assets and liabilities under Delaware Law because of ATEC's status as a wholly owned subsidiary of Ashland. Therefore, **Ashland is not a successor to ATEC/ "Long Foundry," because ATEC and Ashland always remained two distinct corporate entities up to and including ATEC's dissolution.**

Dkt. 33, Declaration of David A. Shaw, Exh. C at 11-12 (emphasis added).

The Court granted the Clausons' motion for summary judgment and specifically held that "Ashland, Inc. is not the successor in interest to ATEC, Inc." *Id*., Exh. E at 2.

ORDER - 5

# III. DISCUSSION

## A. Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 253). Conclusory,

nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Defendants' Motion**

Defendants move for summary judgment based on the provision of the PSA that covers the assignment of the parties' rights. Specifically, Defendants contend that they "never authorized the assignment of the interests of Ashland Technology, Inc. to Ashland Inc., as was required by the [PSA] in order for Ashland Inc. to enforce Ashland Technology, Inc.'s rights under the PSA." Dkt. 27 at 1. Ashland contends that (1) the PSA does not require Defendants' authorization for the transfer of rights to a successor, (2) the rights were transferred through equitable subrogation; and (3) the right to indemnity was transferred through the doctrine of *de facto* merger. Dkt. 32 at 1-2.

Ashland argues that the PSA required consent only for an assignment of rights under the PSA and did not require consent "for the assumption of rights by a successor." Dkt. 32 at 6. Defendants counter that, based on Ashland's positions in the Clauson matter, Ashland should be judicially estopped from asserting the argument that it is a successor of Ashland Technology. Dkt. 34 at 3-6.

"Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers and Steamfitters*, 94 F.3d 597, 600 (9th Cir. 1996). The doctrine of judicial estoppel is an equitable doctrine that may be invoked by the court at its discretion to protect the integrity of the judicial process. *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990). The doctrine has been applied to statements made in separate proceedings. *Rissetto* 94 F.3d at 605.

The Court may consider a number of factors in determining whether the doctrine of judicial estoppel applies. The Supreme Court has described this inquiry as follows:

ORDER - 7

> several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled." A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotations and citations omitted).

In this case, the Court declines to exercise its discretion and grant the equitable doctrine of judicial estoppel. Although Ashland's current position is clearly inconsistent with its prior position and Ashland succeeded in persuading the state court of its prior position, Ashland would not derive an unfair advantage and Defendants would not be burdened with an unfair detriment if the Court considered Ashland's current position. Defendants' only argument in support of this third factor of judicial estoppel is that Ashland "seeks to avoid the language in the PSA that would bar Ashland Inc. from enforcing Ashland Technology's rights under the PSA" Dkt. 34 at 6. The Court is not convinced that the enforcement of contract rights, if they do exist, is an unfair advantage. Moreover, Ashland's inconsistent positions do not question the integrity of the judicial system as intervening facts (the state court decisions and Ashland's decision to settle the Clauson matter) provide a plausible explanation for its current position. Ashland asserts its current position while pursuing indemnification for settling an underlying asbestos personal injury action as opposed to the situation where a party should be judicially estopped from seeking double recovery under inconsistent theories. *See, e.g., Rissetto*, 94 F.3d at 606 ("Plaintiff cannot be permitted to recover money twice on these inconsistent positions."). Therefore, the Court declines to find that Ashland should be judicially estopped from arguing that it is a successor to Ashland Technology. This finding does not address whether Ashland is legally a successor to Ashland Technology.

Defendants argue that, even if Ashland is a successor, the second sentence of paragraph 15.3 of the PSA provides that "only the parties to the PSA have rights, remedies, or claims under the PSA." Dkt. 34 at 3. Defendants, however, have failed to show, at this time, that this sentence of the PSA precludes successors in interest from pursing the indemnification rights of a party to the PSA. In other words, Defendants have failed to show that, as a matter of law, their proposed interpretation of paragraph 15.3 (Dkt. 34 at 3:1-12) is the only plausible interpretation of this contract provision. Therefore, Defendants have failed to carry their burden, at this time, by showing that they are entitled to judgment as a matter of law and the Court denies their motion.

**C.    Ashland's Surreply**

A party may file a surreply to strike material in a reply brief. Local Civil Rule 7(g). In this case, Ashland requests permission to file a surreply to respond to arguments that Leo Long presented in his reply brief. Dkt. 35 at 1. Ashland's surreply is improper under the local rules. Therefore, the Court denies Ashland's motion.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that Leo Long's motion for summary judgment (Dkt. 27) and Ashland motion for leave to file a surreply (Dkt. 35) are **DENIED**.

DATED this 11th day of August, 2011.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 9